**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOAN ANITA MANGINO | ) | CASE NO.  5:25-CV-01655-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL SECURITY | ) | **AND ORDER** |
| | ) | |
| | ) | |
| Defendant, | ) | |

**I. Introduction**

Plaintiff, Joan A. Mangino ("Mangino" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and OVERRULES Plaintiff's Statement of Errors.

**II. Procedural History**

On May 11, 2023, Mangino filed an application for DIB, alleging a disability onset date of May 10, 2023 and claiming she was disabled due to lupus, mixed connective tissues disease, thyroiditis, metabolic syndrome, gastroparesis, elevated liver enzymes, pcos, interstitial disease of lungs, htn, gastro polyps, hypercalcium, osteoporosis, alopecia, hyperlipidemia, andomyosis, coronary artery calcification, pulmonary nodules, back injury, broken left wrist, and Raynaud's syndrome.  (ECF No. 6, PageID #: 46, 266). The application was denied initially and upon reconsideration, and Mangino requested a hearing before an administrative law judge ("ALJ").

1

(ECF No. 6, PageID #: 49). On June 21, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert ("VE") testified. (ECF No. 6, PageID #: 49). On, July 8, 2024 the ALJ issued a written decision finding Mangino was not disabled. (ECF No. 6, PageID #: 46). The ALJ's decision became final on June 18, 2025, when the Appeals Council declined further review. (ECF No. 6, PageID #: 24).

On August 8, 2025, Mangino filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 9, 10, 11). Mangino asserts the following assignment of error: "[t]he ALJ's step 4 finding that Plaintiff can perform her past relevant work is contrary to law and not supported by substantial evidence - because the evidence shows that her past job is a 'composite job,' and because there is no dispute she cannot perform that job, a step 4 denial is inarguably improper." (ECF No. 9 at 1).

## III. Background

### A. Relevant Hearing Testimony

As noted above, Mangino testified at the June 21, 2024 ALJ hearing. (ECF No. 6, PageID #: 49). Mangino testified that she previously worked as a Pharmacy Technician for Altman Health Foundation. (ECF No. 6, PageID #: 73). She testified in her work she mixed chemo drugs for home patients and spent half of her time sitting and standing. (ECF No. 6, PageID #: 74). However, in the last two years, spent half of the time standing, moving, pushing, lifting and bending anywhere up to 50 to 75 pounds. *Id.* Lynn Smith, a Vocational Expert ("VE"), also testified at the ALJ hearing. (ECF No. 6, PageID #: 49). The VE classified Mangino's past work as, "Pharmacy Technician, DOT … 074.382-010, it's considered light and semi-skilled with an SVP of 3." (ECF No. 6, PageID #: 85). The ALJ then asked the VE whether a hypothetical individual with Mangino's age, experience, and residual functional

2

capacity ("RFC") could perform any of Mangino's past work. *Id.* The VE stated that such an individual could not perform Mangino's past work as a Pharmacy Technician as it was *actually performed*, but the individual could perform the Pharmacy Technician role as *generally performed* per the DOT. *Id.* (Emphasis added).

On cross-examination, Mangino's counsel asked the VE whether delivery is a part of the DOT description for pharmacy technicians and if there was a different DOT code that encompassed delivery. (ECF No. 6, PageID #: 89). The ALJ responded, "[y]es, I could certainly give you one. I didn't feel it was done that often that I needed to actually categorize it. But I can if you want me to, counsel." *Id.* On reexamination, the ALJ posed the following question to the VE, "[i]n your opinion, how much of the duties would have to be of a delivery driver in order for you to consider it like a composite job?" (ECF No. 6, PageID #: 93). The VE responded, "… I would say at least 25 to 50 percent of the job. And I didn't get the feeling that this had been done that long or that often that it was something that I needed to provide a DOT code for." *Id.* The ALJ then asked Mangino to describe the frequency of deliveries during her time at Altman Health Foundation. (ECF No. 6, PageID #: 94). She testified, "[i]t wasn't unusual delivering every day. There were days where most of the time we were understaffed for most of the year (phonetic) and we were doing multiple jobs … [w]e've always had to do a few of them because with volume it can increase or decrease." *Id.* She concluded that the number of deliveries varied, with at least one delivery a month, and the deliveries could range from zero deliveries a day to upwards of ten deliveries a day. *Id.*

### B. Relevant Medical Evidence

The ALJ summarized Mangino's health records and symptoms:

> The medical evidence establishes that the claimant pain complaints date to at least 2018, but that x-rays of her bilateral feet at that time showed only some mild

3

chronic arthritic changes (2F). Mid-2019 x-rays of her bilateral knees revealed only a "small patellar enthesophyte [at the] left quadriceps insertion," and accompanying x-rays of the claimant's bilateral hands were wholly unremarkable (2F/1). In late 2021, x-rays of the claimant's lumbar spine demonstrated mild lower level facet arthropathy and "multilevel degenerative disc disease, most pronounced at L2- 3, with disc height loss, degenerative endplate changes, and osteophytes," unchanged as compared to imaging obtained in 2019 (7F/7). Nevertheless, after a considered diagnosis of lupus, the claimant was diagnosed with UCTD based on her "arthritis, positive ANA, [histories of lichen sclerosis and psoriasis], and high titer double-stranded DNA" (2F/1).

In mid-2022, the claimant reported that her plantar fasciitis pain improved with prescribed orthotics/diabetic shoes, and while the undersigned notes that the claimant's prescription for these diabetic shoes/orthotic included a diagnosis of diabetes with neuropathy, the claimant's treatment notes do not reflect this diagnosis and there are no clinical findings consistent with this diagnosis (2F/15-16, 12F).

When seen in GI follow up at that time, after a normal colonoscopy 2 ½-years earlier, the claimant's complaint of [sic] was loose bowel movements "almost on a daily basis"; given her "longstanding diabetes," differential considerations included pancreatic insufficiency, as well as microscopic colitis, and GERD "with an element of gastroparesis" (5F/22). An updated colonoscopy confirmed only benign polyps, and the claimant said that her symptoms had improved "after she had a GI cleanse" (2F/15-16).

In September 2022, the claimant said that previously-noted tension and achiness in her shoulders had improved, and exam findings confirmed that the claimant was "able to raise her hands above her head and [also] behind her back" (2F/15). The claimant's complaints at that time were of hand and low back pain, which she rated at 3/10; she denied having any sicca symptoms, she had a documented Body Mass Index (BMI) of 29, and she acknowledged that she continued to smoke despite her "referral to pulmonology for decreased oxygen saturation" (2F/16). Exam findings were notable for small Heberden's nodes in the 2nd digits of the claimant's hands, for "no myofascial tender points," for "no active [skin] lesions," and for a non-antalgic gait, 5/5 strength throughout, and a normal mood and affect (2F/18). She was referred to physical therapy for her low back complaints, and findings documented during her initial evaluation included right piriformis weakness, poor core strength, weakness in glutes, and poor postural awareness (7F/5).

Pulmonary function and imaging studies, were obtained in late 2022 in evaluation of the claimant's "mild shortness of breath, mostly with excessive exertion," and although the claimant at that time denied any benefit from her 20-session course of physical therapy and trial of Celebrex, as of January 2023, she had "no further follow up" planned with regard to her back, and pulmonary function studies,

including walk testing, yielded normal findings; although a chest CT had revealed pulmonary nodules, only in 1-year follow up was recommended, and although the claimant's sleep study at that time was positive for sleep apnea, the claimant had carried this diagnosis since 2011 and the claimant acknowledged in February 2023 that oral appliance therapy was much better tolerated, and thus more efficacious, than the CPAP therapy she had been unable to tolerate (2F/8, 5F/25, 15F/2, 8, 14).

In April 2023, the claimant had a BMI just over 32, but no evidence of psoriatic rash and no myofascial tender points; she displayed a non-antalgic gait and 5/5 strength throughout, and these findings have remained unchanged (2F/1-4, 17F). The claimant's reported intermittent ankle swelling was differentially diagnosed as tendinopathy (2F/1-4), and for her "complain[ts] of gastrointestinal issues," she was referred back to her GI specialist, Dr. Khetarpal (2F/7). Late 2023 finds the claimant with Raynaud's and sicca features that were well managed with conservative treatment, while the claimant's several skin conditions were "asymptomatic and mild in severity," and as of mid-2024, around the time her husband retired, the claimant's diagnosed hypertensive, diabetic, sleep apnea, GERD, and thyroid impairments were stable, the claimant denied any complaints of chest pain, shortness of breath, and/or dizziness, she had a pulse ox level of 96 percent on room air, and although she complained of "body achiness" and "diffuse joint stiffness," with a pain level of 4/10, she maintained a normal gait and 5/5 strength throughout (16F, 17F/1, 7, 18F; testimony).

(ECF No. 6, PageID #: 54–55).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: Undifferentiated connective tissue disease; osteoarthritis and plantar fasciitis of the bilateral feet; degenerative disc disease and facet arthropathy of the lumbar spine with right piriformis dysfunction; and hypothyroidism (Hashimoto's/autoimmune thyroiditis), obesity, obstructive sleep apnea, hypertension, hyperlipidemia, coronary artery calcification, metabolic syndrome/type 2 diabetes mellitus (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or a combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that she can: Frequently push, pull, handle, finger, and feel bilaterally; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; have no

exposure to moving mechanical parts; and perform no work in high exposed places.

6. The claimant is capable of performing past relevant work (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2023, through the date of this decision (20 CFR 404.1520(f)).

(ECF No. 6, PageID #: 51, 52, 56, 57).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06-cv-1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in

determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Mangino raises the following assignment of error on appeal:

> [t]he ALJ's step 4 finding that Plaintiff can perform her past relevant work is contrary to law and not supported by substantial evidence - because the evidence shows that her past job is a 'composite job,' and because there is no dispute she cannot perform that job, a step 4 denial is inarguably improper.

(ECF No. 9 at 1). To support this argument, Mangino asserts that the ALJ's finding that Claimant's past work included only the pharmacy technician role was unreasonable as her past work included a requirement to make deliveries, which exceeds the light exertional level. *Id.* at 6. Additionally, Mangino contends the delivery requirements are "facially inconsistent" with light work and should be characterized as a "composite job." *Id.* at 6–7. Moreover, Claimant

argues that her testimony supports finding that she was regularly required to make deliveries, this constitutes a "significant element" of her past work, and the ALJ failed to determine whether Claimant's delivery duties constituted a "composite job," thus remand is necessary. *Id*. at 9.

But the Commissioner argues substantial evidence supports the ALJ's finding that Claimant could return to her past work as a pharmacy technician due to Claimant's identification of her past work, Claimant's report and testimony, as well as VE testimony classifying Claimant's past work as "light as generally performed and medium to heavy as actually performed." (ECF No. 10 at 6). This Court agrees with the Commissioner and finds the ALJ's determinations supported by substantial evidence for the reasons set forth below.

At Step Four, the claimant has the burden to establish that she cannot perform her past relevant work in light of her RFC. 20 C.F.R. § 404.1520(a)(4)(iv); *see also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (explaining that a claimant challenging a finding that she was able to perform past relevant work had "fail[ed] to provide [the court] with the factual record [the court] need[ed] to find in her favor"). Generally, if a claimant can perform her past relevant work, she is "not disabled" and the evaluation stops. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). In evaluating whether a claimant is able to perform her past relevant work, an ALJ: (1) will ask the claimant for information about the past work (duties, requirements, etc.); and (2) may consult other sources, such as VE testimony or the DOT. 20 C.F.R. § 404.1560(b); *see also* SSR 00-4p, 2000 SSR LEXIS 8, at *4 (Dec. 4, 2000) ("We may also use VEs and VSs at these steps to resolve complex vocational issues.").

There are three tests for determining whether a claimant retains the ability to perform past relevant work:

8

> (1) [w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, (2) [w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it, or (3) [w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.

SSR 82-61, 1982 SSR LEXIS 31, at *3, 1982 WL 31387, at *1–2.

Moreover, "[a] finding that the past relevant work is a composite job creates an exception to the rule that the Step Four finding can be supported by the ability to do the job as actually performed or as generally performed in the national economy." *Snell v. Commissioner*, No. 14-13661, 2016 U.S. Dist. LEXIS 71294, at *7 (E.D. Mich. Apr. 29, 2016), *adopted by* 2016 U.S. Dist. LEXIS 70466, (E.D. Mich. May 31, 2016) (citing SSR 82-61, 1982 SSR LEXIS 31); *see also Geibig v. Commissioner*, No. 16-14290, 2018 U.S. Dist. LEXIS 48831, at *8 (E.D. Mich. Mar. 26, 2018). Under the Program Operations Manual System ("POMS"), a handbook for internal use at the Social Security Administration, "composite jobs have *significant elements* of two or more occupations and as such, have no counterpart in the DOT." POMS DI 25005.20. (Emphasis added). "Claimant's past relevant work may be a composite job if it takes multiple DOT occupations to locate the *main duties* of the past relevant work as described by the claimant." *Id.* (Emphasis added). However, the existence of multiple required tasks, however, does not automatically make it a "composite job." *Geibig*, 2018 U.S. Dist. LEXIS 48831, at *8.

Claimant contends that pharmacy deliveries were a *significant element* of her past work because "she could be fired for failing to perform it." (ECF. No. 9, at 8) (Emphasis added). Yet Claimant bears the burden to prove that her activities are "main duties" from another DOT position and not additional responsibilities of employment. *See, e.g., Reed v. Berryhill*, 337 F. Supp. 3d 525, 529 (E.D. Pa. 2018) ("In other words, a composite position must involve

9

additional 'main duties' from another DOT position, rather than 'merely excessive function[s] with the job duties from one DOT position.'"); *see Beyler v. Comm'r of Soc. Sec.,* No. 5:2-cv-2283, 2024 U.S. Dist. LEXIS 30947 (N.D. Ohio Feb. 23, 2024) ("The ALJ considered the record and determined that the various lifting and carrying requirements for both positions were incidental job tasks and not 'main duties' for either position."); *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019) ("Although [Claimant] did have additional responsibilities, which the vocational expert said were consistent with those of a stores laborer, these tasks were not the focus of her job.").

In the instant matter, Claimant failed to meet her burden to establish that delivery driving was a "main duty" of her work as a Pharmacy Technician. When questioned by Claimant's counsel regarding the past work, the VE provided the DOT title of Delivery Driver, DOT #292.353-010, to encompass the Claimant's delivery duties. (ECF No. 6, PageID #: 89). However, the VE did not find the separate DOT title necessary to characterize Claimant's past work. *Id*. The VE testified, "I didn't feel [deliveries were] done that often that I needed to actually categorize it. But I can if you want me to, counsel." *Id.* Additionally, Claimant stated that making deliveries on a daily basis and sometimes completing more than one delivery in a single day was not uncommon, she also acknowledged that there were occasions when she made no deliveries at all. (ECF No. 6, PageID #: 93–95). She further explained that the number of deliveries varied based on fluctuations in workload and available staffing, noting that the workplace was frequently short-staffed. (ECF No. 6, PageID #: 94); *see Beyler*, 2024 U.S. Dist. LEXIS 30947, at *8 (holding that the frequency with which Claimant performed additional employment activities was uncertain and thus, Claimant did not meet her burden in proving these

activities were "main duties" of her position). Thus, it was reasonable for the ALJ to determine that Claimant could perform her past work as generally performed in the national economy.

Additionally, the ALJ's conclusions are supported by substantial evidence located in the VE's testimony. The VE testified that Claimant's past work as a Pharmacy Technician, was classified as DOT #249.367-066, light exertional level, yet Claimant performed the job at the "medium to heavy level." (ECF No. 6, PageID #: 85). At the hearing, the ALJ posed the following questions to the VE regarding the classification of Claimant's past work as a composite job:

> Q So Ms. Smith, you indicated you did provide a DOT for Delivery Driver related to the other duties that Ms. Mangino was doing as -- in her position. In your opinion, how much of the duties would have to be of a delivery driver in order for you to consider it like a composite job?
>
> A Well that could vary some, Your Honor. But I would say at least 25 to 50 percent of the job. And I didn't get the feeling that this had been done that long or that often that it was something that I needed to provide a DOT code for.

(ECF No. 6, PageID #: 93–95).

The ALJ then further questioned Claimant regarding the frequency of her delivery duties:

> [Q] How often were you actually making deliveries in a vehicle on a daily or weekly basis?
>
> A It would vary, Your Honor. It's -- it wasn't unusual to varying times. It wasn't unusual delivering every day. There were days where most of the time we were understaffed for most of the year (phonetic) and we were doing multiple jobs …
>
> Q The reason why I'm asking this question is related to the delivery. So was this something that happened in the last -- the latter year of your position, that you had to do deliveries? And at times these would be every day? Or was this something that in the last five years you've always had to do deliveries?
>
> A We've always had to do a few of them because with volume it can increase or decrease. And you know, the drive couldn't -- we handled a six county radius. So the driver couldn't be in all places at all the same time…

Q So you said few. What's a few to you? What's your definition of few?

A It could be zero a day or it could be upwards of ten deliveries, and it just varied.

(ECF No. 6, PageID #: 93–95). Thus, the ALJ considered the VE's responses to Claimant's counsel's inquiry regarding relevant DOT job titles, as well as Claimant's follow-up clarifications about the frequency of her additional delivery tasks. *Id.* Based upon Claimant's reports and testimony, the VE found Claimant's additional delivery duties did not meet the definition of a composite job. *Id.* The ALJ applied the appropriate legal standards, independently analyzed the evidence, and adopted the VE's conclusions to logically conclude Claimant could perform her past work as generally performed in the national economy. (ECF No. 6, PageID #: 56).

However, Claimant contends that the VE's testimony does not constitute substantial evidence as Claimant finds the VE's statement regarding the frequency of the delivery duties inadequate. ("[…] didn't get the feeling that this had been done that long or that often that it was something that I needed to provide a DOT code for.") (ECF. No. 11 at 3). Yet, the VE testified that Claimant's delivery duties did not meet the frequency of composite job, when questioned by both Claimant's counsel and the ALJ. (ECF No. 6, PageID #: 89, 93–95). "Because the VE provided no indication that plaintiff's past relevant work … was a 'composite job,' the ALJ was free to consider whether plaintiff had the RFC to perform the [past] job as generally performed in the national economy." *Hurley v. Comm'r of Soc. Sec.*, No. 1:13-cv-913, 2015 U.S. Dist. LEXIS 26686, at *29 (S.D. Ohio Mar. 3, 2015); SSR 82-61, 1982 SSR. Thus, the ALJ did not err in her consideration of the VE testimony and relied upon substantial evidence in crafting her findings.

Finally, Claimant contends that the ALJ did not provide an adequate explanation in her written decision as it "failed to address the composite job issue." (ECF No. 11 at 3-4). Although

12

the ALJ explained only that her conclusion was "based on the credible testimony of the vocational expert," "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *See McDonald v. Astrue*, No. 5:09-cv-1485, 2010 U.S. Dist. LEXIS 86584, at *19 (N.D. Ohio June 30, 2010) (quoting Senne *v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)); *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019). The path of the agency's reasoning is clear enough to allow for appropriate judicial review. The ALJ's conclusion that Claimant could perform her previous work as a Pharmacy Technician was supported by substantial evidence based upon the record as a whole.

Thus, considering the totality of the record, Claimant failed to meet her burden and establish that the Pharmacy Technician position is a composite job. The ALJ's conclusion that Mangino could perform her past relevant work as a Pharmacy Technician is supported by substantial evidence and the ALJ's determination will not be disturbed. It's the role of the ALJ to weigh evidence, assess credibility and resolve ambiguities in testimony. *Dyson v. Commissioner of Social Security*, 786 F. App'x 586, 588 (6th Cir. 2019). This Court will not re-weigh testimony before the ALJ and to draw a different conclusion on the composite job issue. *Id.* Therefore, the Commissioner's decision shall be affirmed.

## IV. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: February 23, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE